Warren E. Gluck
Judith R. Nemsick
Elliot A. Magruder
31 West 52nd Street
New York, New York 10019
Phone: (212) 513-3200
Fax: (212) 385-9010
warren.gluck@hklaw.com
judith.nemsick@hklaw.com
elliot.magruder@hklaw.com

*Attorneys for Applicant The Industrial Development
Corporation of South Africa Limited*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>THE INDUSTRIAL DEVELOPMENT<br>CORPORATION OF SOUTH AFRICA LIMITED<br><br>               Applicant.<br><br>REQUEST FOR DISCOVERY PURSUANT TO<br>28 U.S.C. § 1782 | Civil Action No. 20-Misc. _____ |

**_EX PARTE_ APPLICATION AND INCORPORATED MEMORANDUM OF LAW
OF THE INDUSTRIAL DEVELOPMENT CORPORATION OF SOUTH AFRICA
LIMITED FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

**<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

TABLE OF AUTHORITIES ....................................................................................................... ii

I.      PRELIMINARY STATEMENT ..................................................................................... 1

II.     JURISDICTION AND VENUE ..................................................................................... 3

III.    FACTUAL BACKGROUND .......................................................................................... 3

      A.      The Parties to the South African Proceeding ..................................................... 4

      B.      Other Parties Relevant to the South African Proceeding .................................. 4

      C.      The Loan Agreement and Assignment Agreement ............................................ 5

      D.      The Default on the Loan Agreement; the Loan Restructuring Agreement .............. 6

      E.      ORE Lists on the JSE and Issues Shares ........................................................... 7

      F.      The South African Proceeding ........................................................................... 7

      G.      Discovery in the South African Proceeding Provides Additional Information
           Necessitating the Filing of the Section 1782 Application ................................. 9

IV.     ARGUMENT ................................................................................................................ 11

      A.      Section 1782 Analysis ...................................................................................... 11

      B.      The IDC Satisfies the Section 1782 Statutory Requirements .......................... 12

           1.      The IDC Is an "Interested Person" in the South African Proceeding ........ 12

           2.      The New York Banks "Reside" or "Are Found" Within This District ...... 13

           3.      The South African Proceeding Qualifies as a Foreign Proceeding for
                Purposes of Section 1782 .................................................................... 14

           4.      The Requested Discovery is "For Use" in the South African
                Proceeding .......................................................................................... 15

      C.      The IDC Also Satisfies the *Intel* Discretionary Factors .............................. 17

V.      CONCLUSION ............................................................................................................. 19

## **TABLE OF AUTHORITIES**

**Cases**                                                                    **Page(s)**

*In re Accent Delight Int'l Ltd.*,
  791 Fed. Appx. 257, 250 (2d Cir. 2019) ...............................................................................3

*In re Accent Delight Int'l Ltd.*,
  869 F.3d 121 (2d Cir. 2017) ........................................................................................11, 15

*In re Application of Consellior Sas*,
  16MC00400, 2017 WL 449770 (S.D.N.Y. Feb. 2, 2017) ........................................................18

*In re Application of The Mehta Int'l Ltd.*,
  No. 1:18-mc-00401 (S.D.N.Y. Aug. 30, 2018) ..............................................................14, 19

*In re Aso*,
  No. 19 MC 190 (JGK) (JLC), 2019 WL 234443 (S.D.N.Y. June 3, 2019) ...........................17

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012) ......................................................................................................15

*In re Children's Inv. Fund Found. (UK)*,
  363 F. Supp. 3d 361, 371-72 (S.D.N.Y. 2019) ..............................................................12, 15

*In re del Valle Ruiz*,
  939 F.3d 520 (2d Cir. 2019) ....................................................................................................13

*In re Dreymoor Fertilizers Overseas Pte Ltd. v. Pure Grown Diamonds, Inc.*,
  20 Misc. 192 (PGG), 2020 WL 2521387 (S.D.N.Y. May 18, 2020) ................................14, 19

*In re Esses*,
  101 F. 3d 873, 875 (2d Cir. 1996) ...........................................................................................12

*In re Eurasian Bank JSC*,
  No. 19-mc-00568 (RA), 2020 WL 85226 (S.D.N.Y. Jan. 2, 2020) ........................................14

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995) ..............................................................................................17, 18

*In re Furstenberg Fin. SAS*,
  No. 18-mc-44 (JGK), 2018 WL 3392882 (S.D.N.Y. July 12, 2018), *recon.*
  *denied*, 334 F. Supp. 3d 616 (S.D.N.Y.), *aff'd*, 785 Fed. Appx. 882 (2d Cir.
  2019) ...................................................................................................................................14, 19

*In re Guo*,
  __ F.3d __, No. 19-781, 2020 WL 3816098 (2d Cir. July 8, 2020) ................................11, 15

*Gushlak v. Gushlak,*
    486 Fed. Appx. 215 (2d Cir. 2012) ......................................................................11

*In re Hornbeam,*
    No. 14 Misc. 424, 2014 WL 8775453 (S.D.N.Y. Dec. 24, 2014) ...........................14

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    542 U.S. 241 (2004) ................................................................................... *passim*

*Maubeni Am. Corp. v. LBA Y.K.,*
    335 Fed. Appx. 95 (2d Cir. 2009) .........................................................................17

*Mees v. Buiter,*
    793 F.3d 291 (2d Cir. 2015) ...........................................................................15, 18

*In re O'Keeffe,*
    650 F. App'x 83 (2d Cir. 2016) .......................................................................11, 17

*Pfaff v. Deutsche Bank AG,*
    No. 20 Misc. 25, 2020 WL 3994824 (S.D.N.Y. July 15, 2020) ..............................13

*In re Piraeus Bank,*
    No. 20-mc-210 (RA), 2020 WL 2521322 (S.D.N.Y. May 18, 2020) ...........13, 14, 15, 19

*Sampedro v. Silver Point Capital, L.P.,*
    958 F.3d 140 (2d Cir. 2020) ................................................................................12

*In re Satfinance Inv. Ltd.,*
    19 Misc. 550 (KPF) (S.D.N.Y. Dec. 3, 2019) .......................................................15

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP,*
    376 F.3d 79 (2d Cir. 2004) ..................................................................................17

*In re Unión Fenosa Gas, S.A.,*
    No. 20-mc-171, 2020 WL 3446871 (S.D.N.Y. June 23, 2020) ..............................15

**Statutes**

1 U.S.C. § 1 ...............................................................................................................13

28 U.S.C. § 1331 .........................................................................................................3

28 U.S.C. § 1782 ............................................................................................. *passim*

The Industrial Development Corporation of South Africa Limited (the "IDC" or "Applicant"), by and through its undersigned counsel, Holland & Knight LLP, respectfully submits this Memorandum of Law in support of its *Ex Parte* Application for Discovery pursuant to 28 U.S.C. § 1782 (the "Application").

## I.    <u>PRELIMINARY STATEMENT</u>

This Application seeks discovery with respect to information and documents located in this Judicial District for use in IDC's pending civil proceeding in South Africa before the High Court of South Africa, Gauteng Local Division, Johannesburg (the "South African Court"), captioned *In the Matter between Industrial Development Corporation of SA Limited v. Oakbay Resources and Energy Limited, et al.*, Case Number 46934/2017 (the "South African Proceeding").  The IDC, a national development corporation that loans money to start-ups and established businesses,  alleges that the defendants in the South African Proceeding (the "South African Defendants") breached certain representation and warranty provisions of a restructured loan agreement (the "Loan Restructuring Agreement") with the IDC by violating South African laws prohibiting money laundering, common law fraud, and securities fraud.  The IDC seeks rescission of the agreement and the payment of the sum of Rand 287.5 million, being the outstanding balance of the capital amount of a loan by the IDC (Rand 37.5 million) and interest thereon (R250 million).

The Application requests information that is relevant and material to the outcome of the South African Proceeding because it would support the IDC's allegations that the South African Defendants breached the representation and warranty provisions in the Loan Restructuring Agreement by committing crimes in part using wire transfers and other financial instruments.  The IDC, for example, has evidence indicating that one or more of the South African Defendants received money via wire transfer proceeds that had been illegally diverted from a South African provincial government agricultural program. The IDC also possesses credible evidence that

1

another South African Defendant was part of a scheme to inflate its listed share price that involved another entity purportedly making a payment of at least $12 million to the South African Defendant in order to purchase that South African Defendant's listed shares.  The IDC alleges that this South African Defendant's conduct constituted securities fraud under South African law.

Finally, the IDC has multiple sources of evidence that the South African Defendants themselves, and via their proxies, issued loans in U.S. Dollars, maintained ledgers that denominated payments in U.S. Dollars, and routed transactions through banks based in New York. Discovery from the New York Banks in the form of wire transfers, account information, and other documents concerning these allegations would provide material support for the allegations set forth by IDC in the South African Proceeding.

Accordingly, the IDC respectfully requests that this Court issue an Order permitting it to issue subpoenas for the production of documents (collectively, the "Subpoenas") for use in the pending South African Proceeding to the following banks that are found or reside within this District: Bank of America N.A ("BOFA"); Bank of Baroda ("Baroda"); Bank of China New York Branch ("BOC"); The Bank of New York Mellon ("BNYM"); BNP Paribas, New York Branch ("BNPNY"); Citibank N.A. ("Citibank"); Commerzbank AG, New York Branch ("Commerzbank"); Deutsche Bank Trust Company Americas ("DBTCA"); HSBC Bank (USA) N.A. ("HSBC"); JPMorgan Chase Bank, N.A. ("JPMorgan"); Mashreq Bank, New York Branch ("Mashreq"); National Bank of Abu Dhabi ("NBAD"); Societe Generale, New York Branch ("SGNY"); Standard Chartered Bank, New York Branch ("SCNY"); UBS AG, New York Branch ("UBS"); and Wells Fargo Bank N.A. ("Wells Fargo") (collectively, the "New York Banks").

The New York Banks maintain the requested wire transfers and records in the ordinary course of business, and can easily search for and produce them without burden or significant

expense.  Moreover, the Subpoenas are narrowly tailored, as they request wire transfer records and other documents for a period of less than two years, and provide specific identifying information in order to assist the New York Banks in avoiding burdensome searches that could produce mishits or errant information.

As set forth in detail below, the IDC's Application should be granted because: (1) the Application satisfies Section 1782's statutory factors; (2) the four discretionary factors set forth in the United States Supreme Court's *Intel* decision weigh in IDC's favor; and (3) granting the Application would satisfy the twin aims of Section 1782 to provide efficient means of assistance to participants in international litigation in United States Courts and to encourage foreign countries to provide similar means of assistance.

## II.     JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1782 as this Application seeks discovery of documents and information located within the Southern District of New York.  The discovery is necessary to assist the Applicant in proving its claims in the South African Proceeding. The Applicant is a foreign entity wholly owned by the South African government.  Venue is proper in this Court as the Application seeks documents in the possession, custody, or control of corporations in this judicial district, and the discovery sought, namely documents, is located in this jurisdiction.  *See also In re Accent Delight Int'l Ltd.*, 791 Fed. Appx. 257, 250 (2d Cir. 2019) (citation omitted) (noting that § 1782 applies extraterritorially).

## III.     FACTUAL BACKGROUND

The facts giving rise to this Application are set forth in detail in the Declaration of Nozizwe Mthembu, dated July 22, 2020 ("Mthembu Dec."), and the Declaration of Nazeer Cassim, dated July 23, 2020 ("Cassim Dec.").

3

## A.     The Parties to the South African Proceeding

The IDC, the plaintiff in the South African Proceeding, is a national development corporation that is empowered to loan up to 1 billion South African Rand to start-ups and established businesses.  Mthembu Dec., ¶ 1.  The IDC maintains a principal place of business at 19 Fredman Drive, Sandown, Johannesburg, South Africa.  *Id.*, ¶ 12.

Oakbay Resources and Energy Limited ("ORE"), a co-defendant in the South African Proceeding, is incorporated in South Africa, under registration number 2009/021537/07, and maintains a place of business at 144 Katherine Street, Block A, Graystone Ridge Office, Sandton, Johannesburg, South Africa.  *Id.*, ¶ 13.

Shiva Uranium (Proprietary) Limited (in Business Rescue) ("Shiva"), a co-defendant in the South African Proceeding, is incorporated in South Africa under registration number 1921/006955/07, and maintains its registered offices at 1A Berg Street, Hartebeesfontein, North West.  *Id.*, ¶ 14.

Oakbay Investments (Pty) Ltd. ("OIL"), a co-defendant in the South African Proceeding, is incorporated in South Africa under registration number 2006/017975/07, and maintains its place of business at 144 Katherine Street, Block A, Graystone Ridge Office, Sandton, Johannesburg, South Africa.  OIL acts through subsidiary entities such as ORE.  *Id.*, ¶ 15.

Action Investments Limited ("Action"), a co-defendant in the South African Proceeding, is incorporated in Mauritius under registration number 091783, and maintains a registered office at Level 6, One Cathedral Square, Jules Koenig Street, Port Louis, Mauritius.  *Id.*, ¶ 16.

ORE, Shiva, OIL, and Action are referred to collectively as the "South African Defendants."  *Id.*, ¶ 8.

## B.     Other Parties Relevant to the South African Proceeding

Upon information and belief, OIL, ORE, and Shiva were controlled by the Gupta family

that are currently at the center of a major fraud investigation in South Africa known as "State Capture." *Id.*, ¶¶ 18-20, 60-61. The primary business persons are Ajay, Atul, and Rajesh "Tony" Gupta (collectively, the "Guptas"). *Id.*, ¶ 18. The South African regulators are investigating, *inter alia*, the Guptas' allegedly unlawful conduct, including the defrauding of the Free State Provincial Government. *Id.*, ¶¶ 60-61.

The shareholders of OIL at the time of the alleged violations of South African law were Atul Gupta, his wife, and Islandsite Investments 180 (Pty) Ltd. (in Business Rescue) ("Islandsite"). The Guptas also controlled Islandsite, and therefore exercised *de facto* control over OIL. *Id.*, ¶ 19.

The Guptas also used multiple United Arab Emirates ("UAE") based entities: Gateway Ltd. ("Gateway"), Global Corporation LLC ("Global"), and Fidelity Enterprises Ltd. ("Fidelity," and collectively, the "UAE Entities"), to perpetuate the violations of South African law alleged by the IDC in the South African Proceeding. *Id.*, ¶ 21.

**C.     The Loan Agreement and Assignment Agreement**

On April 11, 2010, the IDC, ORE, OIL, and Action (the "Borrowers") entered into a Loan Agreement (the "Loan Agreement") wherein the IDC lent the Borrowers approximately South African Rand ("Rand") 250 million.[1] *Id.*, ¶ 24. The Loan Agreement enabled ORE, as nominee for OIL, to finance part of its acquisition of the shares of Shiva (then called Uranium One Africa Limited ("UOAL")), as well as acquire a debt claim against Shiva held by its previous shareholder, an unaffiliated third party. *Id.*, ¶¶ 22-28.

The Loan Agreement contained a provision requiring the Borrowers to warrant and represent that "no part of its business has been conducted in a manner which is corrupt or has involved the payment of any bribe, or improper consideration, or violates any applicable laws."

---

[1] The Rand is the official currency of South Africa.

*Id.*, ¶ 35.  Finally, the  Loan Agreement contained a positive undertaking from each of the South African Defendants that they would "comply in all respects with all laws."  *Id.*

The IDC consented to the assignment of ORE's obligations under the Loan Agreement to Shiva pursuant to an Assignment Agreement among the IDC, ORE, OIL, Action, and UOAL (subsequently renamed Shiva) (the "Assignment Agreement").  Under the Loan Agreement and Assignment Agreement, ORE, OIL, and Action remained jointly and severally liable, irrespective of the assignment of ORE's obligations to Shiva (collectively in this capacity, the "Obligors"). *Id.*, ¶ 25.

## D.      The Default on the Loan Agreement; the Loan Restructuring Agreement

In 2013, the Obligors defaulted on the Loan Agreement.  On June 12, 2014, the parties executed a Loan Restructuring Agreement.  *Id.*, ¶ 31.  The Loan Restructuring Agreement required the Obligors to repay: (1) the remaining principal amount of Rand 250 million lent pursuant to the Loan Agreement; and (2) the "Accrued Return," which constituted the accrued, but unpaid interest under the Loan Agreement and Assignment Agreement.  The "Accrued Return" stood at approximately Rand 202 million.  *Id.,* ¶ 32.

In the Loan Restructuring Agreement, the Obligors represented and warranted that "no part of [their] business[es] had been conducted in a manner which is corrupt or has involved the payment of any bribe or improper consideration or violates any applicable laws."  Moreover, the Obligors agreed to "comply in all respects with all laws."  *Id.,* ¶ 35.

The Loan Restructuring Agreement also provided for "Trigger Events," which would result in the claim for the "Accrued Return" converting into an equity holding by the IDC in Shiva.  *Id.,* One such "Trigger Event" included the listing of Shiva on the Johannesburg Stock Exchange (the "JSE") and, upon listing, offering of Shiva's shares to the public (the "Offering").  Specifically, in the event of an Offering, the Loan Restructuring Agreement required Shiva to settle the "Accrued

6

Return" by permitting the IDC to subscribe to Shiva's shares issued in an Offering at a 10 percent discount of the listing price on the JSE.  *Id.,* ¶¶ 38-39.

### E.     ORE Lists on the JSE and Issues Shares

On November 2, 2014, Shiva advised the IDC that it intended to commence the Offering. However, on November 5, 2014, ORE advised the IDC that it (and not Shiva) intended to list on the JSE and offer its shares (the "Listing Letter").  ORE claimed in the Listing Letter that its listing and share offering would serve as a "Trigger Event."  *Id.,* ¶¶ 40-42.

Consequently, the Accrued Return converted on the IDC's behalf into shareholdings of ORE.  ORE stated that it would issue 28,526,647 shares in ORE to the IDC at Rand 9.00 per share, at a ten percent discount from the listing price of Rand 10.00 per share (the "ORE Shares").  The IDC consented to the issuance of the ORE Shares.  On November 28, 2014, ORE listed on the JSE and issued 28,528,647 of its shares to the IDC (the "ORE Listing"), which constituted the Accrued Return as defined in the Loan Restructuring Agreement.  *Id.,* ¶¶ 43-45.

The IDC later learned that ORE was complicit in orchestrating the use of Gupta-affiliated entities, Fidelity and Accurate Investments Limited ("Accurate"), to lend money to another entity under their control, Unlimited Electronics ("Unlimited"), to facilitate Unlimited's purchase of shares in ORE at an overinflated price.  ORE then instructed Unlimited to initiate multiple sales of ORE Shares to inflate the market price of the ORE Shares on the JSE.  *Id.,* ¶¶ 53, 77.

Moreover, upon information and belief, around this time, the Guptas, through Accurate, also funded the sale of shares by Action to Saranya Investments ("Saranya") to avoid related-party listing issues.  This purchase by Saranya would also constitute Action's breach of the warranties and representation provision in the Loan Restructuring Agreement.  *Id.,* ¶ 78.

### F.     The South African Proceeding

Between November 2014 and November 2017, Shiva made seven payments, totaling

roughly Rand 212.5 million of the debt owed under the Loan Restructuring Agreement, leaving Rand 37.5 million outstanding. *Id.,* ¶ 46. In and during 2017, media outlets in South Africa published revelations in various investigative reports alleging criminal conduct involving OIL, ORE, and the Guptas. The conduct alleged in these reports constituted a breach of OIL and ORE's representations and warranties in the Loan Restructuring Agreement that: (1) no part of their businesses violated applicable anti-corruption and anti-bribery laws; and (2) they complied with all applicable laws. *Id.,* ¶ 47.

Consequently, on November 10, 2017, the IDC terminated the Loan Restructuring Agreement. *Id.* The IDC also tendered the return of the ORE Shares issued to the IDC in the ORE Listing, and demanded the Obligors pay the Accrued Return and the balance of the principal debt owed under the Loan Restructuring Agreement. *Id.,* ¶ 48. The Obligors failed to pay the IDC any of the sums claimed, and disputed the right of the IDC to terminate the Loan Restructuring Agreement. *Id.,* ¶ 49.

On November 30, 2017, the IDC instituted the South African Proceeding (the "IDC Claim"). The IDC Claim sought confirmation from the South African Court that the Loan Restructuring Agreement had been validly rescinded. *Id.,* ¶ 50. The IDC Claim alleges that OIL: (1) violated anti-fraud laws by secretly profiting from a public agriculture contract resulting from a coordinated fraud involving the Guptas, certain UAE Entities, another entity under their control, Estina (Proprietary Ltd. ("Estina"), and therefore OIL knowingly, or reasonably ought to have known, that proceeds received thereunder constituted the proceeds of a crime; (2) falsely warranted in the Loan Restructuring Agreement that no part of its business violated any laws; and (3) in so doing, breached the warranty provision in the Loan Restructuring Agreement. *Id.,* ¶¶ 51-52; *see also* Cassim, ¶¶ 25-28.

The IDC Claim further alleges that ORE in 2014 participated in securities fraud, together with the Guptas, their representatives and affiliates, and the UAE entities.  This securities fraud created a false or deceptive appearance of the demand for, supply of, or trading activity in connection with the ORE Shares on the JSE.  The IDC alleges that this constitutes securities fraud under South African law.  *Id.,* ¶ 53; *see also* Cassim, ¶¶ 25-28.

Due to the rescission, the IDC sought payment of Rand 287.5 million, which comprised the Rand 37.5 million in unpaid principal, and Rand 250 million in Accrued Return.  *Id.,* ¶ 50.  The South African Defendants are jointly and severally liable for these amounts.

The South African Defendants attempted to dismiss the South African Proceeding on the basis that the IDC Claim did not disclose a cause of action or that it lacked factual allegations sufficient to sustain the causes of action.  *Id.,* ¶ 54.  On November 12, 2018, the South African Court issued a judgment rejecting this argument.  As a result, the South African Defendants filed responsive pleadings.  Both sides are proceeding with pre-trial preparation.  *Id.,* ¶¶ 55-57.

**G.     Discovery in the South African Proceeding Provides Additional Information Necessitating the Filing of the Section 1782 Application**

In discovery in the South African Proceeding, the IDC has reviewed documents detailing unlawful conduct with respect to the allegations in the IDC Claim, in part through the improper use of multiple international bank accounts.  *Id.,* ¶¶ 58-70.  This unlawful conduct mostly occurred contemporaneous to the Loan Agreement, the Loan Restructuring Agreement, the Offering, and the ORE Listing and is therefore especially probative to the IDC's allegations in the South Africa Proceeding.  *Id.*

First, the IDC discovered that Estina, an entity related to the South African Defendants, held accounts at Baroda and The Standard Bank of South Africa Limited (together, the "Estina Accounts").  Monies transferred freely between the Estina Accounts.  *Id.,* ¶¶ 62-63.  OIL holds an

account at Baroda, as well as ABSA Bank, another South African commercial bank.  OIL produced an extract from its Baroda account, reflecting that on September 25, 2013, it received two payments, respectively, in the amount of Rand 30 541 613.60 and Rand 8 866 810.43 asserting that such payments were from Fidelity.  *Id., ¶¶* 64-65.  OIL asserts that it received payments from Fidelity relating to an arms-length share sale transaction with it.  The IDC believes that the funds evidenced in these two transfers flowed from the Estina Accounts, through Gateway and Fidelity, and ultimately into OIL's account as part of a round-tripping money laundering exercise.  *Id., ¶* 66.  Upon information and belief, the payments from Estina through the UAE Entities, and ultimately to OIL, were made in part in U.S. Dollars.  The discovery indicates that at least one such payment, made in March 2014, was via a New York Bank.  *Id., ¶¶* 67-68.

Second, the discovery indicates that in November 2014, a proxy for the Guptas, who had signed the Loan Restructuring Agreement on behalf of ORE, was complicit in directing both a $12 million and a further $1 million payment from the UAE entities to ORE.  *Id., ¶* 77.  Third, IDC obtained a ledger sent by a Gupta proxy to one of the Guptas, recording dozens of payments involving the UAE Entities, Estina, and OIL, denominated in U.S. Dollars. *Id., ¶¶* 69-70.   Fourth, the IDC has obtained email correspondence relating to the Loan Restructuring Agreement in which a payment is to be sent to ORE for "Unlimited electronics [*sic*] & Computers; Share subscription ORE." *Id., ¶* 77.  Finally, the IDC has obtained two draft loan agreements in which Gupta affiliates (including the UAE entity, Fidelity) purport to loan Unlimited $12 million and $1 million, in order for Unlimited to subscribe for shares in ORE.  *Id.*

## IV.    <u>ARGUMENT</u>

### A.    Section 1782 Analysis

Section 1782 authorizes the Court, upon the application of an interested person, to order a

resident of the district to give testimony or produce documents for use in a foreign proceeding.

28 U.S.C. § 1782(a) provides that:

> The District Court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusations.  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

To obtain Section 1782 discovery, an applicant must prove the following three statutory

factors:

> (1) the person from whom discovery is sought must reside in or be found in the district of the district court to which the application is made, (2) the discovery must be "for use in a proceeding in a foreign or international tribunal," and (3) the application must be made "by a foreign or international tribunal" or by "any interested person."

*In re Guo*, __ F.3d __, No. 19-781, 2020 WL 3816098, at *3 (2d Cir. July 8, 2020) (quoting *Mees*

*v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)).  An applicant may seek Section 1782 discovery *ex*

*parte.  See Gushlak v. Gushlak*, 486 Fed. Appx. 215, 217 (2d Cir. 2012); *see also In re O'Keeffe*,

650 F. App'x 83, 85 (2d Cir. 2016) ("We also reject [the] suggestion that it was impermissible or

improper for O'Keeffe to bring her application *ex parte*.")

The United States Supreme Court has broadly interpreted Section 1782 in accordance with

the statute's Congressional intent.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241,

259 (2004); *see also In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 134 (2d Cir. 2017) (citing *Intel*,

542 U.S. at 247-49) ("The availability of Section 1782 discovery therefore is quite broad and only has broadened through successive amendments over the years."). "In consequence, the role of the district courts as gatekeepers is paramount." *Id.* (citation omitted).

If the applicant satisfies the statutory factors, the Supreme Court in *Intel* identified four additional discretionary factors to consider when granting a Section 1782 request:

> (1) whether the person from whom discovery is sought is a participant in the foreign proceeding;

> (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance;

> (3) whether the Section 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States; and

> (4) whether the discovery requests are unduly intrusive or burdensome.

*Intel*, 542 U.S. at 264-65. The discretionary factors should be evaluated in light of the "twin aims" of section 1782, which are to "(1) provid[e] efficient means of assistance to participants in international litigation in our federal courts and (2) encourag[e] foreign countries by example to provide similar means of assistance to our courts." *Sampedro v. Silver Point Capital, L.P.*, 958 F.3d 140, 143 (2d Cir. 2020) (citation omitted).

## B.     The IDC Satisfies the Section 1782 Statutory Requirements

### 1.     The IDC Is an "Interested Person" in the South African Proceeding

Applicant is the petitioner in the South African Proceeding and is clearly an "interested person" under 28 U.S.C. § 1782. *See In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 371-72 (S.D.N.Y. 2019) ("[W]here an Applicant is a party to a proceeding, that Applicant satisfies the 'interested person' requirement of § 1782."); *see also In re Esses*, 101 F. 3d 873, 875 (2d Cir. 1996) (finding that the language of § 1782 is clear that a person who is a party to the

12

foreign proceeding satisfies the "interested person" requirement).[2]  Accordingly, the IDC evidently possesses a "reasonable interest in obtaining judicial assistance."  *Intel*, 542 U.S. at 257.

For this reason, the IDC satisfies this first statutory factor.

### 2.      The New York Banks "Reside" or "Are Found" Within This District

The IDC seeks discovery from the New York Banks, each of which "resides" or is "found" in this District.  Specifically, the New York Banks are "found" within this district because their forum contacts support personal jurisdiction in that many are headquartered here and all have processed U.S. Dollar wire transfers for foreign banks through their New York offices.  *See In re del Valle Ruiz,* 939 F.3d 520, 528-530 (2d Cir. 2019) (broadly interpreting "reside or found" to conclude that the statute's language extends to the limit of personal jurisdiction consistent with due process).

First, Bank of America, N.A., The Bank of New York Mellon, Deutsche Bank Trust Company Americas, JPMorgan Chase Bank N.A., HSBC Bank (USA) N.A. and Citibank N.A. have their principal places of business in New York and therefore are plainly subject to the Court's general jurisdiction.  *See, e.g., In re Piraeus Bank*, No. 20-mc-210 (RA), 2020 WL 2521322, *2 (S.D.N.Y. May 18, 2020) (respondent banks were found here because each is a New York bank or has its principal place of business in New York).  Second, the court has specific jurisdiction over all the New York Banks because it is through their New York offices and transactions that they act as intermediaries for the foreign banks in providing the account information relevant to the discovery sought by the IDC.  *See Ruiz,* 939 F.3d at 528-530 (holding that due process is satisfied where non-party's contacts with the forum result in the actual discovery sought); *Pfaff v. Deutsche*

---

[2] Corporations and business entities qualify as a "person" under Section 1782, as the United States Code defines a "person" to include "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."  1 U.S.C. § 1.

*Bank AG*, No. 20 Misc. 25, 2020 WL 3994824, *8 (S.D.N.Y. July 15, 2020) (citations omitted) (holding that discovery sought resulted from respondent's trading activity in New York and therefore provided sufficient connection for specific jurisdiction); *In re Eurasian Bank JSC*, No. 19-mc-00568 (RA), 2020 WL 85226, *1 (S.D.N.Y. Jan. 2, 2020) (finding specific jurisdiction based on banks' transacting business as intermediary in effectuating wire transfers in this District).

This Court consistently grants applications seeking intermediary bank and related discovery from the New York Banks, acknowledging that the discovery sought from the New York Banks is within this District. *See, e.g., Piraeus Bank*, 2020 WL 2521322 at *2; *In re Dreymoor Fertilizers Overseas Pte Ltd. v. Pure Grown Diamonds, Inc.*, 20 Misc. 192 (PGG), 2020 WL 2521387, *2 (S.D.N.Y. May 18, 2020) (granting § 1782 discovery to subpoena many of the New York Banks, including Commerzbank and DBTCA); *In re Application of The Mehta Int'l Ltd.,* No. 1:18-mc-00401 (S.D.N.Y. Aug. 30, 2018) (Dkt. 11) (authorizing wire transfer discovery from same New York Banks); *In re Furstenberg Fin. SAS*, No. 18-mc-44 (JGK), 2018 WL 3392882, *7-8 (S.D.N.Y. July 12, 2018) (authorizing discovery from all New York Banks listed in this Application), *recon. denied*, 334 F. Supp. 3d 616, 619-20 (S.D.N.Y.), *aff'd*, 785 Fed. Appx. 882 (2d Cir. 2019); *In re Hornbeam*, No. 14 Misc. 424, 2014 WL 8775453, *5 (S.D.N.Y. Dec. 24, 2014) (issuing subpoenas to many of the New York Banks because they were "the Banks most likely to provide" intermediary banking services).

Accordingly, the IDC satisfies the second statutory factor.

### 3.     The South African Proceeding Qualifies as a Foreign Proceeding for Purposes of Section 1782

The South African Proceeding constitutes a foreign proceeding in a foreign or international tribunal for purposes of Section 1782. The South African Court is a civil court and a first instance decision maker, and therefore a tribunal under Section 1782. *See Intel¸* 542 U.S. at 257-258

(citations omitted); *Guo*, 2020 WL 3816098, at *4.  The South African Proceeding is a "foreign proceeding" because it is a civil proceeding in the South African Court, which is located in a foreign country.  *Id.*

### 4.    The Requested Discovery is "For Use" in the South African Proceeding

The discovery sought in this application is "for use" in the South African Proceeding as this term is understood for purposes of § 1782. The "for use" requirement of a Section 1782 application has been interpreted broadly.  "Notably, § 1782 makes no mention of necessity, and in several other contexts . . . the Supreme Court ha[s] declined to read into the statute requirements that are not rooted in its text." *Mees*, 793 F.3d at 298 (footnote omitted) (citing, *Intel*, 542 U.S. at 260).  Moreover, the discovery requested in a § 1782 application need not be admissible in the foreign proceeding.  *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012).

Instead, "the term 'for use' in Section 1782 has only its ordinary meaning – that the requested discovery is something that will be employed with some advantage or serve some use in the proceeding."  *Accent Delight*, 869 F.3d at 132 (internal quotation marks and citation omitted); *see also Children's Inv. Fund*, 363 F. Supp. 3d at 371 (noting that an applicant must make only a "*de minimis*" showing that the requested discovery is "for use" in a foreign proceeding, so long as the proceeding falls within the scope of § 1782); *see also, e.g., In re Satfinance Inv. Ltd.*, 19 Misc. 550 (KPF) (S.D.N.Y. Dec. 3, 2019) (ECF No. 5)*; In re Unión Fenosa Gas, S.A.*, No. 20-mc-171, 2020 WL 3446871, *2 (S.D.N.Y. June 23, 2020) (granting § 1782 discovery to seek information from The Bank of New York Mellon concerning the flow of funds of foreign party's debt payments); *Piraeus*, 2020 WL 2521322, at *2 (wire transfer discovery is "for use" in a foreign proceeding because it could support applicant's allegations of the breach of a loan agreement).

For multiple reasons, the discovery requested in this Application from the New York Banks is for use in the South African Proceeding, as the discovery will buttress the IDC's allegations that the South African Defendants' breached the Loan Restructuring Agreement by committing violations of anti-money laundering laws, common law fraud, and/or securities fraud.  Specifically, the discovery from the New York Banks would support many predicate transactions and communications involving the South African Defendants and related parties, including but not limited to, that: (1) payments ultimately remitted via multiple intermediaries to OIL at its account at Baroda derived from the misuse of loan proceeds disbursed by the Free State provincial government to Estina; (2) Fidelity is the currently unknown source of suspect payments to OIL in 2013; (3) Fidelity used Mashreq to route money in U.S. Dollars to OIL's bank account; (4) the ledger indicating that payments in U.S. Dollars involving Estina, the UAE Entities, and OIL, is valid; (5) Unlimited, via a UAE entity, paid ORE roughly $12 million in conjunction with the illegal manipulation of ORE's share price once it listed on the JSE; (6) Unlimited routed a separate $1 million payment to ORE in U.S. Dollars; and (7) Action sold shares to Saranya to avoid related-party provisions of South African securities laws.

If the New York Banks provided evidence supporting any of these allegations, the IDC would almost certainly introduce the evidence into the South African Proceedings.  Finally, given the abundance of existing evidence that the South African Defendants and those acting on their behalf regularly transacted in U.S. Dollars in scenarios in which criminal activity has been credibly alleged, the New York Banks will likely reveal presently unknown evidence of activities that would constitute further breaches of the Loan Restructuring Agreement and, in turn, justify the IDC's decision to terminate the agreement and seek redress in the South African Court.

For these reasons, the discovery requested from the New York Banks would be for use in the South African Proceedings, and therefore the IDC satisfies the third statutory factor.

## C.      The IDC Also Satisfies the *Intel* Discretionary Factors

Once the statutory requirements are met, a district court is free to grant discovery at its discretion. *See Maubeni Am. Corp. v. LBA Y.K.*, 335 Fed. Appx. 95, 96 (2d Cir. 2009). This discretion is not limitless, as the court should exercise it "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004); *see also Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995) ("Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance.").

Each of the *Intel* factors favor granting this Application. First, the New York Banks will not be a party or otherwise participate in the South African Proceeding, and the South African Court does not have jurisdiction to obtain the requested discovery. *See* Cassim Dec., ¶ 37. As such, if this Application is denied, the IDC could not obtain discovery from the New York Banks. Therefore, the first factor weighs in favor of granting the Application. *See In re O'Keeffe*, 650 Fed. App'x at 85 (holding that discovery target's status as a non-party to foreign litigation weighs in favor of granting discovery); *In re Aso*, No. 19 MC 190 (JGK) (JLC), 2019 WL 234443, *5 (S.D.N.Y. June 3, 2019) (when certain New York Banks may be "outside of the [foreign tribunal's] jurisdictional reach," this factor favors applicant).

Second, there is no evidence that the judicial system of South Africa would be unreceptive to the discovery sought here. In fact, the South African Court has not objected to IDC's issuance of document subpoenas to banks over which it has jurisdiction in South Africa. *See* Cassim Dec.,

17

¶ 41; *see also Euromepa¸* 51 F.3d at 1100 (a court should deny discovery on this basis only when it receives "authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782"). The second factor also weighs in favor of granting the Application.

Third, there is no indication that granting the Application will offend the policies of South Africa or establish a circumvention of South African discovery protocols. Rather, South African law permits the use of document subpoenas to financial institutions, and the IDC has employed this procedure in the South African Proceeding to subpoena certain South African banks. *See* Cassim Dec., ¶¶ 39-43. In any event, this factor does not impose on the IDC a showing that the evidence from the New York Banks would be discoverable or admissible in the South African Proceeding. *See Mees*, 793 F.3d at 303 ("Again, § 1782 contains no foreign-discoverability requirement."). The third factor also weighs in favor of granting the Application.

Fourth, the requests are neither unduly intrusive nor burdensome. In assessing this factor, the court should "assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 791 F.3d at 302. The Second Circuit "has generally encouraged district courts to take a permissive approach and 'reconcile whatever misgivings [they] may have about the impact of [their] participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief.'" *Euromepa S.A.*, 51 F.3d at 1101. This factor requires only that "the subject matter of the request [ ] [be] reasonably tailored to speak to the claims and defenses raised in the [foreign] proceedings at issue." *In re Application of Consellior Sas,* 16MC00400, 2017 WL 449770, *2 (S.D.N.Y. Feb. 2, 2017).

With the exception of NBAD and Baroda, the New York Banks participate in the CHIPS system and thus maintain the requested wire transfers and records in the ordinary course of

business, and can easily search for and produce them without burden or significant expense.  *See*

Gluck Dec., ¶ 13 & Ex. 2.  The New York Banks routinely produce these intermediary bank records

within a month of receipt of a discovery subpoena.  Gluck Dec.,¶ 14.

Moreover, the Subpoenas are narrowly tailored, as they request wire transfer records and

other documents for a period of less than two years, and provide specific identifying information

concerning the Discovery Targets in order to assist the New York Banks in avoiding burdensome

searches that could produce mishits or errant information.  *See* Gluck Dec., ¶ 15.  As noted above,

this Court regularly authorizes materially similar Section 1782 discovery as requested in this

Application from the New York Banks.  *See, e.g., Piraeus*, 2020 WL 2521322, at *2; *Dreymoor*

*Fertilizers*. 2020 WL 2521387, at *2; *Mehta Int'l Ltd.,* No. 1:18-mc-00401 (Dkt. 11)*; Furstenberg*

*Fin. SAS*, 2018 WL 3392882, at *7-8.  The fourth factor also weighs in favor of granting the

Application.

For these reasons, the Application satisfies each of the four *Intel* discretionary factors.

Granting the Application will thus serve the twin aims of Section 1782.

## V.    CONCLUSION

In sum, this Application satisfies the statutory requirements of 28 U.S.C. § 1782 and the

discretionary factors set forth by the Supreme Court in *Intel*. Moreover, granting the requested

discovery would further the twin aims of Section 1782. Therefore, the IDC respectfully requests

that the Court issue an Order: (1) granting the Application; (2) authorizing counsel for the IDC to

issue and serve the subpoenas to the New York Banks substantially in the form of the proposed

template subpoena attached as Exhibit 1 to the Gluck Declaration; and (3) granting any relief that

the Court finds just and proper.

Dated: New York, New York
       July 28, 2020                     HOLLAND & KNIGHT LLP

                                         By:    /s Warren E. Gluck
                                              Warren E. Gluck
                                              Judith R. Nemsick
                                              Elliot A. Magruder
                                              31 West 52nd Street
                                              New York, New York 10019
                                              Phone: (212) 513-3200
                                              Fax: (212) 385-9010
                                              warren.gluck@hklaw.com
                                              judith.nemsick@hklaw.com
                                              elliot.magruder@hklaw.com

                                         *Attorneys for Applicant The Industrial Development
                                         Corporation of South Africa Limited*